UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAIN EMERY CHAMBERLAIN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:20-cv-00934-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 21, 24, 25) |

　　　　This matter is before the Court on Plaintiff Rain Emery Chamberlain's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding their application for disability insurance and supplemental security income benefits. (ECF No. 1) The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 8, 10).

　　　　Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") on the following grounds:

　　　　(1) The ALJ failed to assign proper weight to the opinion of the examining psychologist, Dr. Livesay;

　　　　(2) The MRFC is not supported by substantial evidence;

(3) The ALJ improperly rejected the symptom testimony of the Claimant;

(4) The ALJ disregarding evidence of Plaintiff's medically determinable impairment at step Two

(ECF No. 21, p. 2). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I.      ANALYSIS

### A.     Dr. Livesay's Opinion

Plaintiff argues that "[t]he ALJ committed harmful error [by] failing to defer to and afford 'greatest weight' to the well-supported psychological MRFC of the examining psychological CE, Dr. Livesay." (ECF No. 21, at p. 15).

The Ninth Circuit has held the following regarding such opinion testimony:

> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[1]

Here, there were no treating physicians. There were two consultative examiners who each completed psychological evaluations. Dr. Murphy conducted one evaluation on May 23, 2016, and provided a Medical Source Statement regarding Plaintiff's mental residual function capacity concluding that Plaintiff could perform simple repetitive tasks without other mental limitations. (A.R. 415 (Claimant "is capable of performing Simple repetitive Tasks (SRT) on a regular basis

---

[1] Because Plaintiff filed her application before March 27, 2017, 20 C.F.R. § 416.927 applies in considering the weight given to her physicians' opinions. For applications filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies in considering medical opinions; notably, no deference or specific evidentiary weight is given to medical opinions.

2

but not complex tasks. The barriers to her returning to the workforce would be a desire to not work, and homelessness.")). Later, consultative examiner Jerry Livesay completed a psychological evaluation on November 11, 2018, and provided a Medical Source Statement regarding Plaintiff's mental residual function capacity concluding that Plaintiff could perform simple and repetitive as well as detailed and complex tasks, but had mild limitation in the ability to accept instructions and perform work activities on a consistent basis without special or additional instructions, and had moderate limitations in the ability to interact with coworkers and the public, maintain regular attendance in a normal workday/workweek without interruptions, and deal with the usual stress encountered in the workplace. (A.R. 821-822).

Also as summarized by the ALJ, Plaintiff's records were also reviewed by two Office of Disability Determinations (DDS) physicians. Dr. Murillo provided the opinion that Plaintiff would have moderate limitation in their ability to understand, remember, and carry out detailed instructions; work in coordination with or in proximity to others without being distracted by them; and interact appropriately with the general public. (A.R. 90-93). In contrast, Dr. Garcia found Plaintiff could understand and remember work locations and procedures of a simple, routine nature involving one-to-two step tasks and instructions, could maintain concentration and attention in two hour increments, would be able to sustain 8hr/40hr work scheduled on a sustained basis, was able to relate to and accept direction from supervisors and remain socially appropriate with co-workers and the public without being distracted by them, and had no other mental limitations. (A.R. 461).

Based on these varying physician opinions, as well as other medical evidence discussed in the opinion, the ALJ included in the RFC the following limitations based on mental impairments: "he can understand and remember work locations and procedures of a simple, routine nature involving one- to two-step tasks and instructions. The claimant can maintain concentration and attention in two hours increments. He can do work that does not involve contact with the general public. The claimant can do non-collaborative work that does not involve more than occasional

contact with coworkers and supervisors." (A.R. 25). This RFC included fewer work limitations than Dr. Livesay and Dr. Murillo and greater limitations than Dr. Murphy and Dr. Garcia.

In particular, the ALJ assigned reduced weight to the opinion of Dr. Livesay for the following reasons:

> Consultative examiner Jerry Livesay, Ph. D., later completed a psychological evaluation on November 11, 2018 (Exhibit 28F). Symptoms of bipolar disorder, social anxiety, and PTSD were reported (Exhibit 28F at 2). During a mental status examination, the claimant was found to have an expansive and agitated mood with an angry and agitated affect. The examination was otherwise unremarkable (Exhibit 28F) at 5-7). Dr. Livesay's diagnostic impression was of bipolar I disorder and borderline personality disorder (Exhibit 28F at 7).
>
> Dr. Livesay then provided a Medical Source Statement with his opinion regarding the claimant's mental residual functional capacity. In it, he opined that the claimant had no limitation in his ability to perform simple and repetitive, as well as detailed and complex, tasks. Dr. Livesay indicated that the claimant had mild limitation in his ability of accept instructions from supervisors and perform work activities on a consistent basis without special or additional instructions. He stated that the claimant had moderate limitation in his ability to interact with coworkers and the public, maintain regular attendance and complex [sic] a normal workday/workweek without interruptions from a psychiatric condition, and deal with the usual stress encountered in the workplace (Exhibit 28F at 7-8).
>
> While the undersigned agrees that the claimant should have limited public contact, the Administrative Law Judge finds the other mental limitations set forth by the consultative examiner to be to be [sic] inconsistent with both the medical evidence of record and those probative mental health records germane to the period beginning on June 1, 2016, notwithstanding a report that the claimant no longer takes psychotropic medications (See Exhibit 22F at 2) and subsequent reports of normal or largely unremarkable physical and psychiatric examinations (See, e.g., Exhibits 16F at 2-3 and 11-12 and 17F at 59-60). Accordingly, Dr. Livesay's opinion is afforded some, but not significant or great, weight.

(A.R. 45-46).

The cited documents include an examination on January 19, 2017 listing relatively normal findings, including "Psychiatric, Normal, Orientation—Oriented to time, place, person & situation. Appropriate mood and affect." (A.R. 479-48). Another cited record is dated June 16, 2017 and notes relatively normal results from a psychiatric specialty examination, including General Appearance and Manner: "usual and customary to patient," Description of Abnormal or

Psychotic Thoughts: "None," Insight and Judgment: "Intact," and Attention/Concentration: "Intact." (A.R. 566-567). Another cited record is dated December 14, 2016, and includes the notes "I'm learning to cope better," "Stopped psych meds—2 weeks ago." (A.R. 696).

Plaintiff argues that this reasoning is not legally sufficient because Plaintiff believed they suffered side effects from psychotropic medication, and the cited records do not sufficiently represent the record, which includes many reports of sad and anxious moods, flashbacks, anxiety, irritability, mood swings, stress, racing thoughts, and other negative emotions and symptoms. (A.R. 581). Plaintiff points to the following records: A.R. 436, 339, 440, 441, 560, 791, 441, 791-92, 819, 439, 440, 791, 792, 557, 581, 576, 797-798, 562. (ECF No. 21, at p. 20). These records include complaints regarding mental health, *see e.g.*, A.R. 576 ("she reports having flashbacks and nightmares and intrusive thoughts about other trauma in her life," "sad and anxious at times"); A.R. 436 ("mood was anxious with congruent affect"); A.R. 440 ("client continues to demonstrate difficulties in relating to others. Client also demonstrates some exaggerated reactions to negative circumstances, such as expressed intense anger and frustration at being dropped from a class."). The records also contain reports of more normal mental health, *see, e.g.*, A.R. 576 ("patient denies having mood swings or readability," "cooperative," "alert" "normal" cognition," normal speech, normal orientation); A.R. 436 ("attentive and cooperative throughout the session,' "properly oriented to person, place, time and circumstance," "appropriately dressed," "judgment and insight were fair.").

Plaintiff also points to their conduct at the hearing and at one of the consultative examinations. During the hearing before the ALJ, the Plaintiff interrupted the vocational expert and made a statement including "I'm not a hypothetical. Most of those jobs won't allow you to sit in your own wheelchair or in a chair period. . . . [T]here's so many different variables to these different jobs than you bring in discrimination that people shouldn't do but do. You bring in all these different factors. . . . the only job I could possible ever do would be online and there are no jobs. I've looked." (A.R. 75). Additionally, at the appointment for the consultative examination

by Dr. Livesay, Plaintiff "was overhead [sic] yelling at the office technician upon his arrival. The claimant was angry and yelled, 'This place isn't handicapped assessable! [sic] Do you know how long it took to get in here, what a struggle it is for people like me to het in here! This is discrimination!" Plaintiff claims that these outbursts demonstrate that Plaintiff has significant work limitations, consistent with the opinion given by Dr. Livesay.

The Court has reviewed the medical opinions and underlying records and finds that the ALJ gave legally sufficient reasons for the opinions given by Dr. Livesay. The specific records cited by the ALJ as the reason for less weight given to Dr. Livesay's opinion, while not numerous, do show normal mental status examinations that support the ALJ's decision. Moreover, the discussion of Dr. Livesay's opinion came in the context of reviewing four medical opinions who differed in their assessments as to what work restrictions, if any, would be required to accommodate Plaintiff's mental limitations. None of these physicians were Plaintiff's treating physician. The ALJ's weight given to each and incorporation into the RFC is reasonable and supported by the evidence. This is especially true as Plaintiff's mental status examinations generally showed normal objective tests results. While the Court appreciates that therapeutic notes at the time reflected Plaintiff's emotional difficulties, and that Plaintiff expressed anger during the hearing and before an examination, these do not provide a basis to overturn the ALJ's weighing of the extensive opinion and medical evidence.

### B. The Mental Residual Functional Capacity

Plaintiff next argues that the Mental Residual Functional Capacity ("MRFC") assessment is not supported by substantial evidence. Plaintiff argues that the limitation in the MRFC to "noncollaborative work that does not involve more than occasional contact with coworkers and supervisors," still allows for up to 33% of an 8-hour day, five days a week, consistently, for 40 hours a week. Plaintiff argues that this conclusion is inconsistent with the substantial evidence that Plaintiff fails to act appropriately with others. Plaintiff again points to Plaintiff's statement to the Vocational Expert at the hearing and complaints about the access to the consultative

examiner. Plaintiff also points to notations by providers that Plaintiff lacks understanding and insight into what constitutes appropriate behavior or interactions. (*See, e.g.,* A.R. 441 ("client expresses victimization in all areas of their life and existing on a continual basis.")). Plaintiff argues that they cannot sustain normal work activity without causing major disruptions to the work environment.

A court upholds an RFC determination "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "Substantial evidence ... is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ––– U.S. ––––, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Here, as discussed above, the RFC included greater mental limitations than given by a consultative examiner, Dr. Murphy, and a reviewing DDS physician, Dr. Garcia. Moreover, the record contains numerous normal mental status examinations for Plaintiff. These opinions and medical evidence provide substantial evidence in the record for the ALJ's MRFC.

### C.    Subjective Symptom Testimony

Plaintiff next argues that the ALJ committed harmful error by failing to provide the requisite "clear and convincing" reasons for rejecting psychological symptomology evidence.

The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

The ALJ made the following findings regarding Plaintiff's subjective symptom testimony:

> The undersigned notes that there are some inconsistencies between the claimant's allegations and his self-reported daily activities beginning on June 1, 2016. Specifically, while the claimant has alleged that he is limited in his ability to work at any exertional level, the record reflects that he can perform a wide range of activities of daily living, such as taking care of a minor child, preparing basic meals, basic cleaning and organizing, laundering clothes, and grocery shopping (Exhibit 8E, at 2-4). The claimant has also indicated that he can perform some multi-step tasks, such as using public transportation and independently handling his personal finances. (Exhibit 8E at 4). Finally the claimant has stated that he has regular interaction with others (Exhibit 8E at 5). The undersigned finds the claimant's ability to perform the aforementioned daily activities to be inconsistent with this allegation that he is unable to perform tasks at any exertional level.
>
> The Administrative Law Judge further finds the claimant's assertion that he is unable to work to be inconsistent with both the medical evidence of record and those probative mental health records germane to the period beginning on June 1, 2016, including a report that the claimant no longer takes psychotropic medications (See Exhibit 22F at 2) and subsequent reports of normal or largely unremarkable physical and psychiatric examinations (See e.g. Exhibits 16F at 2-3 and 11-12 and 17F at 59-60). Taken as a whole, these records do not comport with the claimant's reported functional limitations since that date.

(A.R. 27). In the function report primarily relied on by the ALJ, Plaintiff stated their daily activities consist of "get my kid ready and to school. Usually I go to doctors appointments or other appointments, or I sleep. I eat lunch, get my kid, and help him with homework. . . ." Elsewhere Plaintiff states that they make food for their child, "get him to school and doctors, etc." Plaintiff also described preparing "one or two course meals, sometimes heated meals," once or twice a day. Plaintiff stated that they shop for food, basic household needs, clothes, and other occasional needs twice or three times per month. Plaintiff stated that they can walk a few miles usually without rest. (A.R. 262-271). Furthermore, as discussed above, the cited records confirm that Plaintiff stopped using psychotropic medications and had normal physical and mental status examinations.

While the Court agrees that these activities and medical records alone do not indicate that Plaintiff can perform full time work, they are inconsistent with the daily activities described in Plaintiff's hearing testimony. At the hearing, Plaintiff testified that they are in bed all day except

for one day a week because "my energy is completely drained if I get out of bed for too long." (A.R. 71).  Plaintiff also stated that they have panic attacks "[e]very time I have to leave the house, every time I have to get on a bus, every time I have to make a phone call or that I get a phone call.  Sometimes certain emails or forms, but mostly its phone calls or leaving the house or getting on a bus."  (A.R. 67).

After review of the record, the Court finds that the ALJ provided legally sufficient reasons for not fully crediting Plaintiff's subjective symptom testimony.

### D. Plaintiff's Physical Medically Determinable Impairments at Step Two

Finally, Plaintiff argues that there is substantial objective medical evidence of record that Plaintiff suffers from a "severe" impairment at Step Two of the sequential evaluation of calcaneal spurs of the feet and documented pain and weakness in the feed and ankles, which more than minimally affects their ability to perform work activity. Thus, Plaintiff claims, the ALJ harmfully erred by failing to account for the physical limitations of this impairment in the RFC.

The Ninth Circuit has held as follows regarding the ALJ's decision to find an impairment not severe at Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen,* 80 F.3d at 1290 (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir.1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85–28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments. *See also Yuckert,* 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

*Webb v. Barnhart,* 433 F.3d 683, 686–87 (9th Cir. 2005).

9

In her Step Two analysis, the ALJ provided as follows regarding the Plaintiff's impairment of calcaneal spurs of the bilateral feet:

> The undersigned finds that the claimant's medically determinable physical impairment of calcaneal spurs of the bilateral feet have not caused a limitation or restriction having more than minimal effect on his ability to do basic work activities since June 1, 2016. Therefore the Administrative Law Judge deems this condition nonsevere.

(A.R. 28). The ALJ did not cite anything in the record to support this conclusion.

In their brief, Plaintiff cites substantial evidence indicating a physical impairment with more than a minimal impairment, including AR 766-767 ("Musculoskeletal pain/spasm: It occurs constantly and is worsening. Location: bilateral foot. The pain is deep. . . Pt c/o worsening pain to right foot secondary to bone spurs and new onset of increased pain to left woot. Pt states she is unable to walk and fulfill her job duties and is requesting a wheelchair. . . . Discussed that a wheelchair is not indicated for current diagnosis of bone spur and a podiatry referral will be placed."), A.R. 804 ("ASSESSMENT/DIAGNOSIS; PAINFUL ACHILLES TENDONITIS, RIGHT WITH ASSOCIATED ANKLE EQUINUS, RIGID REARFOOD AND PES PLANUS DEFORMITY'), and A.R. 824-25 (prescription for "manual lightweight wheelchair").

In response, Defendant claims that any alleged error in the ALJ's findings of Plaintiff's severe impairments is harmless. Defendant claims that the ALJ considered the entire record, including medical opinions, in making the RFC. Defendant points to Plaintiff's generally normal physical findings, *see, e.g*., A.R. 475 (noting all normal findings in physical exam); A.R. 479-80 (constitutional: negative: fatigue, fever, insomnia, weight gain and weight loss"); A.R. 564 ("musculoskeletal: no abnormalities noted in system. Gait and station appear normal."). Additionally, one doctor diagnosed malingering, stating that Plaintiff was clinically well and there was no anatomical reason for their using a wheelchair. A.R. 704 ("assessment: malingering. Impression: pt clinically well, no anatomical reason [sic] for him to be in wheel chair").

The Court finds that the ALJ erred in not evaluating the evidence in determining the severity of Plaintiff's calcaneal spurs of the bilateral feet at Step Two. The ALJ did not explain

any of the evidence in the record in reaching her conclusion. Moreover, there was no medical opinion evidence of this impairment, so the Court cannot determine if it was evaluated in connection with the RFC.

## II. CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. Specifically, the ALJ shall reconsider its determination at Step Two that the medically determinable physical impairment of calcaneal spurs of the bilateral feet has not caused more than a minimal effect on Plaintiff's ability to do basic work activities since June 1, 2016, and consider what if any revisions to the additional steps should be done based on a full examination of the evidence.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**December 7, 2021**__           /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE